Ronald E. Long Sr., pro se.

Helene Chudzik, Deputy Atty. Gen., Trenton, N.J., for defendants.

**Ronald E. LONG, Sr., Plaintiff,**

v.

**Howard BEYER, et al., Defendants.**

**Civ. No. 87–1301 (AET).**

United States District Court,
D. New Jersey.

Jan. 11, 1988.

## MEMORANDUM AND ORDER

ANNE E. THOMPSON, District Judge.

This matter is before the court on the parties' submissions in response to the court's Order of August 11, 1987.

Both plaintiff and defendant have submitted proposed legal access plans for the Capital Sentences Unit ["CSU"] inmates and both parties have had an opportunity to critique their adversary's proposals. As this court indicated in its Memorandum and Order of August 11, 1987, it is concerned about several aspects of plaintiff's legal access. The court is concerned about plaintiff's allegation that his requests for legal materials are not being honored or are only being responded to after extensive delays. Furthermore, the court questions whether the overall legal access given to plaintiff is sufficient to meet the requirements of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Since plaintiff is in the Capital Sentences Unit he is not allowed to visit the prison law library in person. At the moment his only legal access is by requesting specific items from the law library and receiving them only when his requests are specific enough to allow the law librarian to process the requests. Discussing the service provided by the prison law library staff, Judge Cowen notes in *Valentine v. Beyer*, C.A. No. 85–4401 (Plaintiff's Ex. 3, unpublished opinion, August 7, 1987 at p. 12),

[f]or inmates in close custody, they act largely as a messenger service bringing requested material to the inmates. While this certainly can be a valuable service anyone who has ever conducted legal research knows that is an extremely difficult way to conduct meaningful legal research.

This court concluded in its August 11, 1987 Memorandum and Order that plaintiff had shown a reasonable probability of success on the merits and is entitled to a preliminary injunction to insure the protection of his constitutional right to legal access.

This preliminary injunction now being ordered by the court is an amalgam of the plans suggested by the plaintiff and the defendants. It is designed to insure that plaintiff's constitutional right to legal access is protected without unduly interfering with existing prison procedures and taking into account the distinct nature of a capital sentences unit. The court will enjoin the defendants to provide legal access to the plaintiff pursuant to the following operating procedures:

1. The Director of Education may assign one staff person to coordinate and monitor all legal services provided to the Capital Sentences Unit. Two paralegals from the law library and two paralegals from the Inmate Legal Association ["ILA"] should be named to service and assist the inmates on the CSU. While these assignments are subject to confirmation by the Prison Classification Committee, the ILA will be allowed to nominate the two ILA paralegals who it considers best able to assist CSU inmates and the Prison Classification Committee must give due deference to the ILA selections.

2. The paralegals will be scheduled to assist inmates in the CSU on Monday through Friday from 8:30 a.m. to 10:30 a.m. If, however, it is found that this does not allow sufficient time to provide meaningful legal access, the court will consider a motion to modify this schedule.

3. Inmates will submit G–27 legal request forms to the wing officer. Each form must request a specific service, i.e. supplies, photocopied cases, or paralegal assistance. The wing officer will sign the G–27 and return the amber copy to the inmate as a receipt. The wing officer will give all requests to the unit supervisor on a daily basis. The latter will sign the request and forward it to Traffic Control. Traffic Control will log in each G–27 request, date stamp it, keep the pink copy and forward the yellow and white copies to the law librarian. The assigned staff person in the law library will list all requests in a log book which will be maintained in the office of the Assistant Supervisor of Education. He will also enter the information on a sheet in the inmate's legal access folder maintained in the law library. The Capital Sentence files may be kept separate from other inmate files in the law library. From the date stamped by Traffic Control the paralegal or law library staff person will have seven (7) days to comply with a request. All requests for ILA assistance will be forwarded to the ILA and maintained in the ILA's files as is the case with all other legal assistance requests processed by the ILA. When the request has been filled the inmate will sign the G–27 form a second time. The white copy will remain with Traffic Control and the yellow copy will be filed with the appropriate organization as discussed above. If material must be obtained from the State Law Library, the defendants will have ten (10) days rather than seven to supply the material to the inmate.

4. No assistance will be provided by the law library or the ILA concerning any matter which is, at that time, being handled by an attorney.

5. When an inmate paralegal wishes to visit an inmate, the law librarian will call the unit to determine whether the paralegal may enter at that time. If approval is given, the law librarian will notify Traffic Control and the paralegal will proceed to Traffic Control to obtain the specifically designated CSU badge. Inmate paralegals will then be logged in as for other close custody units. Paralegals will not be strip searched inasmuch as they will only communicate with the inmates through the visitor's window. All legal materials for the

inmate will be given to the guard who will give them to the inmate. As with incoming legal mail, the guard may not read the material but may check it for contraband. The materials must be immediately turned over to the inmate so they can be referred to during discussions with the paralegals.

6. As with other inmates, those in the CSU will be allowed copies of only five (5) cases for a two-week period. Inmates will, however, be permitted to return cases prior to the end of the two-week period and then receive five additional cases. To return cases early, inmates must submit a G–27 slip. These G–27 slips should be acted upon as quickly as possible by a library staff person to insure that the inmates are allowed to make meaningful progress in their legal research. Furthermore, when inmates have pending emergent motions and/or a limited time to respond to a motion every effort should be made to allow more than five cases at a time. When services are provided by a staff member, that person will secure the inmate's signature indicating the requested services have been rendered. When services are provided by a paralegal, the G–27 form will be handed to the wing officer prior to the visit. The officer will have the inmate sign the form and return it to the paralegal upon the completion of the visit.

Finally, the court notes that the installation of a small law library on the CSU would alleviate many of the problems with this legal access plan and insure that plaintiff and all other CSU inmates receive meaningful legal access. A small law library would allow inmates to do sufficient research to make suitable, specific requests to the prison law library. Such an arrangement could significantly curtail G–27 requests and ease the burden of acting on a vast number of requests quickly to insure a response within seven days of each request.

It is therefore on this 11th day of January 1988,

ORDERED that the defendants are hereby enjoined to provide legal access to Capital Sentences Unit inmates in accordance with this Memorandum and Order (though it may be supplemented by additional internal procedures); and it is further

ORDERED that the defendants distribute a copy of this Memorandum and Order to each inmate on the Capital Sentences Unit within five days of this Order.